IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **COMRENT INTERNATIONAL, LLC and EXPERIUM TECHNOLOGIES, LLC,** | : : : : | **CIVIL ACTION** |
| Plaintiffs, | : : | No. 13-5732 |
| v. | : : | |
| **LANCE PALATINI,** | : : | |
| Defendant. | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                                   **October 24, 2013**

      Plaintiffs ComRent International, LLC and Experium Technologies, LLC brought suit against defendant Lance Palatini under federal and state law for trademark infringement, misappropriation of trade secrets, and conversion of corporate assets.[1] The plaintiffs frame this dispute as being between an employer and "a disgruntled former employee who has stolen intellectual property." The defendant describes it as a dispute between Experium's shareholders. The defendant moved for dismissal for improper venue or, alternatively, transfer of venue. For the reasons set forth below, I will grant this motion and transfer the action to the Eastern District of Virginia.

---

[1] Because this complaint arises under the Lanham Act, 15 U.S.C. § 1114 and § 1125, this court has federal question jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## I. BACKGROUND[2]

Experium is a Virginia limited liability corporation, which specializes in innovative and dynamic methods for load bank testing for a variety of industries.[3] In 2009, the defendant and Clayton Taylor co-founded Experium as its sole members and owners.[4] Taylor, a resident of Maryland, owned eighty percent (80%) of Experium; the defendant, a resident of New Jersey, owned twenty percent (20%). On December 29, 2012, Taylor and the defendant entered a Second Amended and Restated Operating Agreement for Experium which reiterated their respective roles as the sole two members of Experium, their ownership interests, and Taylor's role as managing member.[5] The agreement clearly indicates that the laws of Virginia should govern the operations of Experium.[6]

At some point after December 29, 2012, Taylor transferred his ownership interests in Experium to plaintiff ComRent, making it the eighty percent (80%) owner and

---

[2] I accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendant's affidavits. See Bockman v. First American Marketing Corp., 459 Fed.Appx. 157, 158 n. 1 (3d Cir. 2012).

[3] Load banks are devices that generate electrical power for the purpose of testing, supporting, or protecting another power source. For example, one may be used to test a back-up power generator in a hospital to determine its functionality and capacity without affecting the primary power generators.

[4] Palatini Decl., Doc. 7, Ex. 3, ¶ 2.

[5] Experium Second Amended Operating Agreement, Doc. 7, Ex. 4.

[6] Section 10.5 regarding "Applicable Law" states that: "All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the Commonwealth of Virginia." Section 10.8 provides that any suit involving a dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of Virginia or any state or local court within the Commonwealth of Virginia and that "[a]ll Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceedings." Section 2.1 also provides that "Reports to Members" be governed by the laws of Virginia. See Experium Operating Agreement, Doc. No. 7, Ex. 4.

Managing Member of Experium.[7] The defendant objected to the appointment of ComRent as Managing Member, claiming it was inconsistent with the Operating Agreement.[8]

ComRent is a Maryland limited liability company with a principal place of business in Upper Marlboro, Maryland.[9] It is a leading provider of load bank rentals and service, with business throughout North America and abroad. In October 2009, ComRent hired the defendant to serve as a vice president of product development.[10] As part of his employment, the defendant signed a Confidentiality and Office Privacy policy requiring his non-disclosure and proper use of ComRent's proprietary information.[11] A violation of this policy could result in termination.

The plaintiffs assert that the defendant primarily worked on matters related to Experium while employed by ComRent. The relationship between ComRent and

---

[7] The defendant claims Taylor transferred his entire interest on December 31, 2012 and then became Chairman of the ComRent Board of Directors. Palatini Decl., Doc. 7, Ex. 3, ¶ 7. Taylor had been President and CEO of ComRent. See ComRent Employee Handbook, May 19, 2011, Doc. No. 9, Ex. 2, at 6. ComRent confirms that Taylor did transfer his interest in Experium to ComRent but not until July 2013. Martinez Decl., Doc 5, Ex. 6, ¶ 42. It is uncontested that Taylor is currently the Chairman of ComRent's Board.

[8] Palatini Decl., Doc. 7, Ex. 3, ¶ 9. The Experium Operating Agreement permits a quorum when Member(s) holding not less than fifty-one percent (51%) of the vote are present. Operating Agreement, Doc. No. 7, Ex. 4, § 5.2.1. The Agreement also permits the transfer of member rights if Members holding at least fifty-one percent (51%) consent. Id. at § 6.1. The agreement also states that "No Member shall have the right or power to Voluntarily Withdraw from [Experium] without the consent of the remaining Members" but distinguishes "voluntary withdrawal" from "transfer" in the definitions. Id. at §6.2, Art. IX.

[9] ComRent International is wholly owned by ComRent Holdings, a Delaware corporation with its principal place of business located at the same Maryland address as that of ComRent International. ComRent Holdings is the eighty percent (80%) shareholder of Experium.

[10] Martinez Decl., Doc 8, Ex. 1, ¶ 2.

[11] ComRent asserts that Palatini signed a copy of this policy on October 24, 2009 and then signed ComRent's Employee Handbook on July 17, 2011 which contained this policy.

Experium at the time the defendant was hired, however, is unclear.[12] The plaintiffs describe Experium as a "ComRent-related entity," but it does not appear that ComRent had any sort of control over Experium's assets on or before Taylor transferred his control.

As part of his employment, the defendant established an Internet location to store, access, and edit all of Experium's intellectual property and confidential commercial information through use of "Google Drive," an online storage service.[13] He had exclusive knowledge of the username and password to access this online storage site. The plaintiffs contend that the defendant also stored information on other Internet-based storage sites and on other electronic devices aside from Google Drive.

In June 2013, ComRent hired Red Wolf Engineering as a consultant to review Experium's intellectual property "for the purpose of assisting ComRent in analyzing options for the future of Experium."[14] The defendant refused to allow Red Wolf any access to Experium's intellectual property, believing that ComRent might divest Experium of its intellectual property.[15] As a result, he was fired from ComRent on

---

[12] The Operating Agreement dated December 29, 2012 acknowledges ComRent and Clay Taylor as "ComRent Parties" and notes that the "ComRent Parties may be in competition with the Company's business" such that this activity "shall not constitute a violation of this Agreement." Experium Operating Agreement, Doc. No. 7, Ex. 4, § 5.4.2. However, there is no mention of ComRent having a membership or managing interest in Experium in the Experium Operating Agreement at that time.

[13] Google Drive is located online and can be accessed from any computer after the correct username and password in imputed.

[14] Red Wolf's tasks included: documenting Experium's technology in connection with its EXR product line used by ComRent's rental fleet of load banks; to develop complete installation instructions for the EXR product line for ComRent technicians, and to develop a functionality matrix comparing Experium products to similar products in the marketplace. Red Wolf entered into a non-disclosure agreement with both ComRent and Experium.

[15] Palatini Decl., Doc. 7, Ex. 3, ¶ 9. The plaintiffs' complaint acknowledges that this was the defendant's reason for refusing to cooperate with Red Wolf.

September 11, 2013. Thereafter, the plaintiffs requested that the defendant turn over all of Experium's intellectual property and confidential information. He refused.

ComRent and Experium filed suit shortly thereafter. They claim that the defendant: 1) stole the username and password needed to access Experium's corporate files, 2) is infringing upon Experium's trademark, and 3) is exercising unauthorized dominion and control over Experium's other intellectual property and confidential commercial information, including its Internet homepage, customer invoices, and equipment information.[16] Because it cannot gain access to this information, the plaintiffs claim that Experium has approximately $700,000 in pending orders frozen.

## II. DISCUSSION

The defendant moved to either dismiss the claim under Federal Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, remove the suit to the Eastern District of Virginia under 28 U.S.C. §1404(a), or the doctrine of forum non conveniens. I will first discuss whether venue in this district is appropriate and then turn to the issue of forum transfer.

### A. Dismissal Under Rule 12(b)(3)

Venue must generally be established for each cause of action in a plaintiff's complaint. Kravitz v. Inst. for Int'l Research, Civ. A. No. 92-5045, 1993 WL 453457, at *3 (E.D. Pa. Nov. 5, 1993). Venue in federal question cases is appropriate in:

---

[16] The plaintiffs filed a motion for a writ of seizure and preliminary injunction to compel the disclosure of the password and return of the intellectual property to its control and prevent defendant from disclosing this intellectual property or confidential commercial information. See Doc. No. 5. The plaintiffs claim that the defendant has disclosed Experium's intellectual property and confidential information to a competitor of Experium who is funding his defense. Doc. No. 5, Ex. 5. This motion has not been decided because the venue choice may affect the disposition of this motion—as I will explain. The plaintiffs also seek a permanent injunction, along with compensatory and punitive damages.

> 1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> 3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b). As a result, venue may be appropriate in several districts. See Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.1994). The plaintiffs' complaint alleges that venue in the Eastern District of Pennsylvania is proper because a substantial part of the events, acts, and/or omissions giving rise to this action occurred in this district, in accord with §1391(b)(2). I find little evidence to support this contention.

The nature of the litigation is important in deciding whether "substantial" events or omissions took place in a particular district. See Kalman v. Cortes, Civ. A. No. 09-684, 646 F.Supp.2d 738, 742 (E.D. Pa. Jul. 28, 2009). The primary focus of the plaintiffs' suit is to gain exclusive control over Experium's intellectual property and confidential information in the defendant's possession.[17] The substantial events giving rise to this claim stem from Clayton Taylor's recent transfer of shareholder control in Experium to

---

[17] ComRent claims that by virtue of his employment with ComRent alone, the defendant had access to all of Experium's intellectual property and confidential business information. It is not entirely clear what specific intellectual property the plaintiffs seek; only a certificate of Experium's trademark was cited in their complaint. However, as the defendant notes, as co-founder and current owner of Experium he is identified as the patent-holder on several of Experium's patents. See Doc. No. 7, Ex. 1, at 8 n. 8.

The Operating Agreement also indicates that Experium "shall be managed by the Members and the Managing Member appointed pursuant to Section 5.1.2." Experium Operating Agreement, Doc. No. 7, Ex. 4, § 5.1. This clause further indicates that the defendant, as a member of the company has some say in how Experium and its assets are managed, irrespective of his employment with ComRent.

ComRent.[18] But for this transfer, it does not appear that ComRent would have an exclusive right to Experium's information or property. Thereby, substantial events determining the venue of this action would relate to this transfer of control.

While it is unclear where that transfer actually occurred, there is nothing to indicate that this event happened in Pennsylvania—given that Taylor is a Maryland resident, ComRent is a Maryland company, and Experium is a Virginia corporation. Additionally, there is nothing to indicate that the recent signing and negotiations surrounding the Second Amended Operating Agreement—which outlines the management of Experium and its assets—took place in Pennsylvania.[19] The defendant states that he signed the agreement in New Jersey. Though it is not clear where Taylor signed this agreement, it seems highly unlikely that as a Maryland resident he signed it or negotiated it in Pennsylvania.

---

[18] Even if I were to frame this dispute as the plaintiffs contend—that is, between an employer and employee—Pennsylvania still does not appear to be an appropriate forum. Defendant claims that most of the meetings he had with Clayton Taylor, as Chairman of the Board of ComRent, and Raul Martinez, the CEO of ComRent, regarding Experium took place in Maryland. Raul Martinez claims he did meet with the defendant at the Bethlehem address to be introduced to both the defendant and to Experium as a company on or about April 22, 2013. Martinez Decl., Doc 8, Ex. 1, ¶ 29. However, there is no indication that this meeting involved the events giving rise to the action, especially since the disagreements over ownership of Experium's intellectual property began in June 2013.

The plaintiffs contend that the reason defendant must turn over Experium's confidential information and intellectual property is because he is "no longer as employee responsible for Experium's business." Doc. No. 5, Ex. 5. The ComRent Employee Handbook and ComRent Confidentiality and Office Privacy Policy, which the plaintiffs state gives them a right to request Experium's proprietary information from the defendant, was prepared in accordance with Maryland and federal law, not Pennsylvania law. While the Handbook notes that "ComRent's policies may vary in accordance with local law" for those employees outside of Maryland, this reference to other state laws is vague and does not necessarily implicate Pennsylvania law.

Additionally, the plaintiffs' breach of fiduciary duty claim has no basis in Pennsylvania law since it is a Maryland corporation, Experium is a Virginia corporation, and defendant is a New Jersey resident. There is no showing elsewhere by the plaintiffs that their claims are governed by Pennsylvania law.

[19] In contract disputes, courts can consider a number of factors including where the contract was negotiated or executed; where the contract was to be performed; the location where the alleged breach occurred; and where the alleged harm occurred. See Mandelbaum v. Hornstein, No. 05-4052, 2006 U.S. Dist. LEXIS 76989 (D.N.J. Oct. 23, 2006).

Most importantly, the Experium corporate assets or information at issue are not located in Pennsylvania.[20] While the plaintiffs claim that the intellectual property and information being sought may be located at Experium's Pennsylvania location, the plaintiffs appear to have access to the assets at this site.[21] Furthermore, the Pennsylvania location appears to house and store loan bank equipment, not the electronic files the plaintiffs seek. Instead, the property and information the plaintiffs seek is located on the Internet or at defendant's home in New Jersey.[22]

The plaintiffs argue that venue is appropriate in Pennsylvania because they claim Experium's principal place of business is located in Bethlehem, Pennsylvania—not in Owings, Maryland as outlined in its Operating Agreement.[23] The defendant, however, claims that the principal office remains in Maryland.[24] Whether the Bethlehem location is

---

[20] In their complaint, the plaintiffs contend the confidential information possessed by defendant was located at his residence in New Jersey. However, the plaintiffs' response to the motion for dismissal or change of venue contends that the information is either at defendant's home, the Experium location in Bethlehem, or some unknown place on the Internet. They offer no reason for the change in their allegations.

[21] This point is further supported by an email between defense counsel and ComRent's counsel in which defendant requested that his personal effects from the Pennsylvania location be returned to him.

[22] The defendant contends that none of the intellectual property referenced by the plaintiffs was "created, stored, or maintained at the Pennsylvania location." Palatini Decl., Doc. 7, Ex. 3, ¶ 12.

[23] The plaintiffs cites several reasons why Experium's true headquarters in located in Bethlehem and not in Maryland: 1) invoices routinely issued from the Bethlehem, Pennsylvania address; 2) Experium goods are shipped free on board this address; and 3) payment for the goods provided is directed to the Bethlehem, Pennsylvania address; 4) Experium's prototypes and physical equipment used in research and development are located in Bethlehem, Pennsylvania, and 5) Experium performed equipment demonstrations for ComRent in Experium's headquarters in Bethlehem, Pennsylvania. Martinez Decl., Doc 8, Ex. 1, ¶ ¶ 18-19, ¶ 25-26. They also cite to Experium's website, which indicates that Bethlehem, Pennsylvania is the current headquarters and is being controlled by the defendant, as further evidence of the true location of the principal office. According to the plaintiffs, no business is transacted at the Maryland address. Martinez Decl., Doc 8, Ex. 1, ¶¶ 15-16.

[24] The defendant claims that the Pennsylvania location is nothing more than a storage facility with benches and tools which has no permanent office or landline. Palatini Decl., Doc. 7, Ex. 3, ¶ 11. The Experium Operating Agreement from December 2012 says that the principal office of Experium is 7640 Investment Court, Unit A, Owings, MD 20736 "or any other place upon which the Members agree." Experium Operating Agreement, Doc. No. 7, Ex. 4, § 1.5.

the actual principal place of business for Experium does little to change the analysis.[25] "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" Cottman Transmission Systems, 36 F.3d at 294.

As explained above, the substantial events giving rise to whether the plaintiffs have an exclusive right to Experium's intellectual property and confidential information do not appear to have taken place at the Bethlehem site. The defendant rarely worked at the Bethlehem site and instead worked primarily from his home in New Jersey.[26] Though the defendant may have sent correspondence related to the Pennsylvania location as part of his work, this would not be enough to establish venue in this district. See Cottman Transmission Systems, 36 F.3d at 294 ("Events or omissions that might only have some tangential connection with the dispute in litigation are not enough."); see also Loeb v. Bank of America, No. 02–CV–3833, 254 F.Supp.2d 581, 587 (E.D. Pa. March 24, 2003)(finding that substantial correspondence with the district was "woefully insufficient" to establish venue).

Furthermore, venue is not appropriate under the other two prongs of §1391(b). Under §1391(b)(1), venue would not be proper because the defendant is a resident of

---

[25] Since the location of the principal place of business does not affect this analysis, I will not find one way or the other but do note that there is no formal indication (i.e. a corporate resolution, corporate meeting minutes, etc.) that the members of Experium have agreed that its principal office be located any place other than the Maryland location. See Experium Operating Agreement, Doc. No. 7, Ex. 4, § 1.5. Furthermore, the Experium Operating Agreement says that "meetings of the Members shall be held at the Company's principal place of business or at any other place in *Maryland* designated by the Member calling the meeting," indicating that decisions regarding the management of Experium were intended to occur at the Maryland location or in Maryland. Id. at § 5.2.1.

[26] The plaintiffs claim that the defendant works at the Pennsylvania site more than he asserts. Martinez Decl., Doc 8, Ex. 1, ¶ 28, ¶¶ 30-31. However, given that the property and information they seek is at the defendant's New Jersey home, it would appear that the work he did on this property and information was not done at the Pennsylvania location.

New Jersey. Under §1391(b)(3), the Eastern District of Pennsylvania would only be appropriate if there were no other district in which this action could be brought.[27] However, the facts indicate that other venues are possible—namely the Eastern District of Virginia, District of New Jersey, or the District of Maryland.

Since I can find no basis for venue being proper in the Eastern District of Pennsylvania under any of the three prongs of §1391, I will turn to whether transfer of venue is proper under §1404(a).

**B. Transfer of Venue under 1404(a)**

Once a court determines that it lacks proper venue, it may, in the interest of justice, transfer the case to a district court in which the case could have been brought "or to any district or division to which all parties have consented." 28 U.S.C. § 1406(a), §1404(a); see also Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962). Transfer is generally appropriate, instead of outright dismissal, when the plaintiffs may be penalized by "time-consuming and justice-defeating technicalities." Goldlawr, Inc., 369 U.S. at 467 (internal quotation marks omitted).

The defendant moves for transfer to the Eastern District of Virginia pursuant to the forum selection clause of Experium's Operating Agreement, which stipulates that

---

[27] This point assumes that personal jurisdiction over the defendant is proper in this district. The plaintiffs' complaint alleges that the defendant is subject to personal jurisdiction in Pennsylvania without offering much information to support this claim. Though the defendant is not a resident of Pennsylvania, he does not contest this point. For this reason, I will assume that the defendant is subject to personal jurisdiction in this district based on the minimal contacts he had with the Experium Bethlehem location. However, from the facts pled, it is not entirely clear whether personal jurisdiction in Pennsylvania over the defendant is proper.

10

disputes should be resolved according to Virginia laws.[28] While the plaintiffs' choice of forum should be afforded great weight and given "paramount consideration" regarding a change of venue, other factors may weigh more heavily than this consideration. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970).

In deciding whether to transfer a case, a court must balance the private and public interests protected by § 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The private interests include the parties' preferences, whether the claim arose elsewhere, the convenience of the parties and witnesses, and the location of relevant books and records. Id. Public interests include: the enforceability of the judgment; practical considerations making trial easy, expeditious, or inexpensive; the efficiency of the relative courts in terms of case congestion; local interest in deciding local controversies at home; the public policies of the for a; and the familiarity of the trial judge with the applicable state law. Id. at 879-80 (internal citations omitted).

With regards to these factors, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown . . . to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Though the burden of establishing the need for transfer usually rests with the defendant moving party, a valid forum selection clause shifts the burden to the plaintiff to show why it is not bound by the contractual choice of forum. Jumara, 55 F.3d at 879-80. "Thus, while courts normally defer to the plaintiff's

---

[28] The Operating Agreement stated that "the performance of the obligations imposed by this Agreement shall be governed by the laws of Virginia" and any suit involving a dispute arising under this agreement may only be brought in federal or state court in Virginia. Experium Operating Agreement, Doc. No. 7, Ex. 4, §§ 10.5, 10.8.

choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Id. at 880. While a forum selection clause "should not receive dispositive weight," Id. , it is a significant factor that should "figure centrally in [a district court's] calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

The plaintiffs do not explain why the dispute is not governed by this clause and instead only assert that this claim does not arise under the Operating Agreement.[29] Yet, the plaintiffs also indicate that defendant's interest in Experium does not entitle him as minority owner to cripple the business, pointing back to the relevance of the Operating Agreement in determining the parties' rights to Experium's assets.[30] As the defendant argues, any resolution of the claims asserted by Experium will first require a court to resolve under Virginia law: the rights of the defendant with respect to Experium, the determination of who currently is the Experium managing member, and whether the circumstances presented here allow ComRent and its current management to divest the defendant as a minority shareholder of Experium's intellectual property, which he helped create. Thus, it logically follows that this suit is a dispute falling with the purview of the

---

[29] The plaintiffs instead cite to CertainTeed Corp. v. Nichiha USA, Inc., Civil Case No. 09-CV-3932, 2009 WL 3540796, at *4 (E.D. Pa. Oct. 29, 2009)(Stengel, J.) in explaining their choice of the Eastern District of Pennsylvania as the appropriate forum. The plaintiffs' reliance on CertainTeed is misplaced. I found that venue in Pennsylvania was appropriate in CertainTeed, which was purely an employment dispute between a Pennsylvania employer and former employee, because CertainTeed was a Pennsylvania corporation that stored confidential information and trade secrets on computers at its Valley Forge, Pennsylvania headquarters. In addition, a forum selection clause was not present in that matter, making the Jumara balancing distinctly different. Here, the defendant is a shareholder in Experium, the confidential information sought by the plaintiffs is not located in Pennsylvania, and the dispute is governed by a forum selection clause which applies to all parties.

[30] Even in explaining why the defendant's minority shareholder role gives him no right to the property they are seeking, the plaintiffs cite to Virginia law. See Doc. No. 5, Ex. 5.

Operating Agreement.[31] For that reason, the Eastern District of Virginia would be a venue to which the parties have consented, their preference as members of Experium.[32]

Beyond the forum selection clause, the other private factors appear to neither weigh for or against either fora. The only party that might be inconvenienced by this change would be the defendant, since the other parties and witnesses are located in Maryland.[33] However, it is the defendant who prefers the change of forum. The relevant documents and records at issue can be accessed from any forum, as they are stored on the Internet. The remaining documents and records located at the defendant's home in New Jersey, he contends, can just as easily be transferred to Virginia as they would be to Pennsylvania.

In addition, other public interests weigh in favor of transfer to the Eastern District of Virginia. Resolution of the corporate governance issues certainly will require the application of Virginia corporate law as applied to Experium, a Virginia LLC.[34] A Virginia court will be better apt at handling the nuances of Virginia corporate law and the

---

[31] Thereby, the plaintiffs' reliance on <u>Wild v. Jungle Media Group</u>, No. 02-5123, 2004 WL 834695 (E.D. Pa. Mar. 17, 2004) is also misplaced since the heart of this dispute goes back to the parties' rights under the Operating Agreement.

[32] This would also be the venue to which all parties would have consented to personal jurisdiction. Given that personal jurisdiction over the defendant in this district is questionable, this point is also important to my analysis.

[33] The defendant's home is approximately 240 miles from Alexandria, Virginia. ComRent's principal place of business is in Upper Marlboro, Maryland, which is only 21 miles from Alexandria, Virginia. Though not a party to the case, Taylor will likely be a key witness; he resides on Friendship, Maryland which is approximately 32 miles from the Eastern District of Virginia Courthouse in Alexandria, VA. Thus, Experium, ComRent, and Taylor cannot claim a legitimate hardship from being required to litigate in Virginia.

[34] Even more to the point, it is difficult to see how any of the claims presented by Experium and ComRent possibly could be decided before a determination is made of those Virginia state law issues. If these issues are resolved in favor of defendant, then all of Experium's tort claims fail since they are premised on a claim that defendant lacked legal authority to do what he is alleged to have done.

rights of the defendant as a minority shareholder.[35] Furthermore, a Virginia judge and jury have more of an interest in correctly interpreting Virginia corporate law than do the people of this district. Lastly, the Eastern District of Virginia is commonly known as the "rocket docket," proving that the case will move through quickly and efficiently. This factor is important since the plaintiffs are requesting injunctive relief.

The plaintiffs contend that the transfer would harm their action because no replevin remedy is available under Virginia law.[36] Whether the plaintiffs even have a viable replevin remedy is questionable. The intellectual property being sought is allegedly contained on computers at defendant's residence in New Jersey, which he possesses under claim of right. To be successful in a replevin action, a plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question. International Electronics Co. v. N.S.T. Metal Products Co., Inc., 88 A.2d 40, 43 (Pa. 1952); Wilson v. Highway Service Marineland, 418 A.2d 462, 464 (Pa. Super. 1980). "Exclusive" right of possession means a right which excludes the defendant. It seems highly unlikely that such claim properly can be asserted here by plaintiffs. Thus, Pennsylvania replevin remedy would appear to be of little use to the plaintiffs.

---

[35] Interestingly, the Agreement specifically notes that *only* the defendant as the minority shareholder has been advised to seek counsel regarding the legal and tax implications of the Agreement. Experium Operating Agreement, Doc. No. 7, Ex. 4, § 11.1.

[36] There do not appear to be any other major differences between Pennsylvania and Virginia law regarding the other state claims asserted. Pennsylvania and Virginia statutes regarding trade secrets and state tort claims are almost identical, as Pennsylvania adopted the Uniform Trade Secrets Act (UTSA) and Virginia trade secret law is almost identical to UTSA. See 12 Pa. C.S.A. § 5301; Avtec Systems, Inc. v. Peiffer, 21 F.3d 568, 574 (4th Cir. 1994)(noting similarity between VUTSA and UTSA). See also Va. Code Ann. § 59.1-326.

The forum selection clause, along with the other private and public <u>Jumara</u> factors, weigh in favor of transferring this suit to the Eastern District of Virginia in the interest of fairness and justice.[37]

### III.     Conclusion

For the above reasons, I will grant the defendant's motion for change of venue to the Eastern District of Virginia.[38]

An appropriate Order follows.

---

[37] On April 1, 2013, the United States Supreme Court granted certiorari in <u>Atlantic Marine Construction Co. v. U.S. District Court</u> (U.S. Supreme Court No. 12-929) to address the effect forum selection clauses can have on choice of venue. Oral arguments in this case were heard on October 9, 2013. <u>Jumara</u> currently outlines the Third Circuit's views on this issue. <u>Jumara,</u> 55 F.3d at 880. While defendant argues that the unsettled nature of this procedural issue warrants dismissal, I decline to accept this argument because justice necessitates that this conflict be resolved as quickly and efficiently as possible, since the plaintiffs have requested a preliminary injunction.

[38] Though it's arguable that the District of Maryland may be a more appropriate venue—given the locations of the parties and witnesses and substantial events giving rise to this action—the defendant does not request a transfer to Maryland and the plaintiffs claim that Maryland would be an inappropriate venue. "[V]enue does not have to have greatest connection to the cause of action or be the 'best forum' for the action, as multiple districts could be proper based on the operative facts." <u>Paul Green School of Rock Music Franchising, LLC v. Rock Nation, LLC</u>, Civ. A. No. 08-4503, 2009 WL 129740, at *2 (E.D. Pa. Jan.13, 2009) (citing <u>Cottman Transmission Sys.</u>, 36 F.3d at 294).